IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

      vs.                                                                                            Case No. 1:21-cr-00997- KWR

MICHAEL ANTHONY MONTOYA,

   Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Defendant's Opposed Motion to Exclude Testimony and Evidence Regarding Interrogation of Defendant Due to Discovery Violations (**Doc. 52**). After reviewing the motions and the relevant law, the Court finds that the motion is not well taken, and therefore, is **DENIED**.

### BACKGROUND

Defendant Michael Anthony Montoya is charged with one count of possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924. **Doc. 84**. On January 10, 2020, Federal Bureau of Investigation (FBI) Special Agent Jordan Spaeth and FBI Taskforce Officer Michael Hallberg interviewed the Defendant in custody. **Docs. 52 at 2; 58 at 2.** The interview was not recorded. **Doc. 72 at 9.**

On February 10, 2020, Agent Spaeth authored a brief report describing the interview:

> "On January 10, 2020 Michael MONTOYA was interviewed at the Metropolitan Detention Center by the writer and FBI TFO Michael Hallberg. TFO Hallberg read the FD-395 outloud to Montoya. Montoya agreed to speak with us and he signed the FD-395.
>
> See TFO Hallberg's report concerning the details of the interview. SA Spaeth added the signed FD-395 and interview notes into the 1A folder." **Doc. 52 at 8.**

1

The original report was produced in discovery by the United States, pursuant to the magistrate judge's Discovery Order, dated July 22, 2022.[1] **Doc. 17.** The Defendant did not file a waiver, and therefore was entitled to discovery within fourteen days of the order's entry. *Id.* **at 2.**

On July 20, 2023, newly-appointed defense counsel Harry Zimmerman requested that the United States produce notes taken by agents or officers present at Mr. Montoya's interrogation. **Docs. 43; 52 at 9.** On August 15, 2023, Mr. Zimmerman repeated his request, and the Government responded that "1) there was a report written about it, and (2) I don't have separate notes for it." **Doc. 52 at 11.** On September 29, 2023, defense counsel Christopher Dodd requested interview notes for a third time, based on Agent Spaeth's February 20, 2020, report that indicated the existence of Agent Spaeth's interview notes. **Doc. 52 at 18.** In response, the United States agreed to produce Officer Hallberg's report but not the interview notes, arguing that the defendant was not entitled to them. **Doc. 52 at 17.**

On October 2, 2023, the Defendant filed a motion requesting that this Court exclude all evidence and testimony at trial relating to the Defendant's interrogation based on a violation of Fed. R. Crim. P. 16(a)(1)(B)(ii), or, alternatively, that this Court compel the Government to produce the notes. **Doc. 52 at 6.** By the time the United States filed its response on October 16, 2023, it had produced the requested interview notes and Officer Hallberg's report. **Docs. 58 at 4; 72 at 2, 8-11.** In his reply, Mr. Montoya again asked that this Court exclude evidence or testimony about the content of Mr. Montoya's interrogation. **Doc. 72 at 4.**

## LEGAL STANDARD

---

[1] "**2. DISCLOSURE OF EVIDENCE BY THE GOVERNMENT.** Unless the defendant has filed the aforesaid waiver, and subject to paragraph 12 below, within 14 days of the entry of this Order, the Government shall provide to the Defendant's attorney without motion the discovery to which the Defendant is entitled pursuant to Rules 16(a)(1)(a), (B), (C), (D), (E), and (F) of the Federal Rules of Criminal Procedure." *See* **doc. 17 at 1-2.**

2

Discovery in criminal cases is governed by Federal Rule of Criminal Procedure 16 (hereinafter "Rule 16"). In particular, Rule 16(a)(1)(B)(ii) states:

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent.[2]

A trial court may, at its discretion, impose sanctions when a party fails to comply with Rule 16 including (i) prescribing discovery methods and timelines; (ii) granting continuances; (iii) prohibiting a party from introducing the undisclosed evidence; or (iv) entering any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2); *United States v. Gonzales*, 164 F.3d 1285, 1291 (10th Cir. 1999). However, "if a sanction is imposed, it should be the least severe sanction that will accomplish prompt and full compliance with the court's discovery order." *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988) (internal quotations omitted).

In *Wicker*, the Tenth Circuit outlined three factors that a trial court should consider when determining whether a sanction is appropriate: (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. 848 F.2d at 1061.

If the Government didn't act in bad faith, but doesn't supply a legitimate reason for the delay, a trial court may weigh the first factor in favor of the Defendant. *See United States v. Moya*, 748 Fed. Appx. 819, 823 (10th Cir. 2018) (unpublished); *Wicker*, 848 F.2d at 1061 (finding that the government's neglect of its Rule 16 disclosure duty weighed against it). However, the trial court must

---

[2] "The change recognizes that the defendant has some proprietary interest in statements made during interrogation regardless of the prosecution's intent to make any use of the statements. The written record need not be a transcription or summary of the defendant's statement but must only be some written reference which would provide some means for the prosecution and defense to identify the statement." Fed. R. Crim. P. 16 advisory committee's note to 1991 amendment.

weigh the punitive nature of sanctions with its duty to maintain the integrity of the court's schedule. *See United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002) ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."); *United States v. Paup*, 933 F.3d 1226, 1234 (10th Cir. 2019) (finding that suppression of evidence was necessary to maintain the integrity and schedule of the court even though the opposing party was not prejudiced).

## DISCUSSION

Mr. Montoya argues that he is entitled to Agent Spaeth's rough interview notes under Rule 16(a)(1)(B)(ii) because they are a written record containing oral statements made to individuals he knew were government agents. **Doc. 52 at 5.** In response, the United States argues that there is "no discreet right to the preservation or production of handwritten notes that have been incorporated into final reports or statements." **Doc. 58 at 5.**

The plain text of Rule 16(a)(1)(B)(ii) is clear. It requires the Government to produce any portion of *any* written record that documents a defendant's statements made during an interrogation to a person known to be a government agent. *See* Fed. R. Crim. P. Rule 16(a)(1)(B)(ii) (emphasis added). The contested written record in question is Agent Spaeth's handwritten notes. **Doc. 52 at 2-3.** These notes documented post-arrest statements made by Mr. Montoya to Agent Spaeth and Officer Hallberg, two individuals Mr. Montoya knew to be government agents. ***See* docs. 52 at 8; 72 at 2;** Rule 16(a)(1)(B)(ii). Mr. Montoya's subsequent requests for the rough interview notes were made with enough specificity to help the United States identify the existence of the records and their locations. *See* **doc. 52 at 15-19**; Fed. R. Crim. P. 16 advisory committee's note to 1991 amendment ("The written record need not be a transcription or summary of the defendant's statement but must only be some written reference which would provide some means for the prosecution and defense to identify the statement.").

There is no exception in Rule 16 that permits the Government to only produce summary reports that incorporate other unproduced written records. *See* **doc. 58 at 4;** Fed. R. Crim. P. 16(a)(1)(B)(ii). The Tenth Circuit caselaw cited by the United States refers to general investigatory notes and notes taken during witness interviews, not written records of a defendant's oral interrogation statements to known government agents. *See United States v. Shovea*, 580 F.2d 1382, 1389-90 (10th Cir. 1978) (finding no *Jencks* violation when general investigatory notes and FBI agents' rough notes from witness interviews were destroyed due to customary agency policy); *United States v. Garcia-Martinez*, 730 Fed. Appx. 665, 676-77 (10th Cir. 2018) (unpublished) (finding no *Brady* violation when the Government provided summary disclosures of the information in its confidential informant files, rather than the original documents and raw data). Despite Agent Spaeth incorporating his handwritten notes into a summary document, the interrogation notes were themselves a written record producible under Rule 16(a)(1)(B)(ii). *See* **doc. 72 at 8.** Therefore, any rough notes detailing the Defendant's statements to Agent Spaeth and Officer Hallberg on January 10, 2020, should have been produced within fourteen days of the entry of the Discovery Order. *See* **doc. 17**; Rule 16(a)(1)(B)(ii).

Having found a violation of the Discovery Order, this Court now turns to the sanctions requested by the Defendant. *See* **docs. 17; 52 at 6; 72 at 6;** Fed. R. Crim. P. 16(d)(2). Mr. Montoya argues that the Government willfully violated the Discovery Order despite multiple attempts by defense counsel to alert the Government to the violation; he therefore requests the suppression of any evidence or testimony related to his interrogation. **Doc. 52 at 5-6.** In response, the Government argues that the Defendant was not prejudiced by the violation of the Discovery Order. **Doc. 58 at 6.** For the reasons below, the Court agrees.

While this Court has discretion to impose sanctions under Rule 16(d)(2), the discretion must be guided by the factors described in *Wicker*. 848 F.2d at 1061. The first *Wicker* factor—the reason for the delay—weighs slightly against the Government. *See id.* The United States' reason for the delay

was simply that the Defendant was not entitled to the handwritten notes from the interrogation. **Doc. 58 at 4.** The Court must first determine whether the Government exhibited bad faith in declining to produce discovery. *See Wicker*, 848 F.2d at 1060. While the United States did not produce the interview notes for fourteen months and then declined to do so despite Mr. Montoya's repeated requests, the Defendant has not shown that the United States acted in bad faith. *See* **doc. 72 at 5**. Rather, the United States' reasoning about why it did not produce the notes remained consistent in its communications with defense counsel and in its briefing—it's good faith belief, based on Tenth Circuit caselaw, that the Defendant was not entitled to the notes. *See docs.* **52 at 13-19; 58.**

Even if there is no bad faith, the Court must then determine whether the Government's reasons for the delay are legitimate. *See Moya*, 748 Fed. Appx. at 823; *Wicker*, 848 F.2d at 1061. Here, the plain text of Rule 16 is clear, and the caselaw supporting the Government's position did not apply to interview notes documenting a defendant's oral interrogation statements. *See Shovea*, 580 F.2d at 1389-90; *Garcia-Martinez*, 730 Fed. Appx. at 676-77. Given that the United States had no legitimate reason to withhold production of Agent Spaeth's interview notes, the first *Wicker* factor weighs in the Defendant's favor. 848 F.2d at 1061.

The second *Wicker* factor is the extent of prejudice to Mr. Montoya because of the United States' delay in producing Agent Spaeth's interview notes. *See id*. Mr. Montoya claims that he was prejudiced in two ways: (1) the delay inhibited his ability to draft his pre-trial motions; and (2) the Government threatened to penalize the Defendant by revoking existing plea offers, thereby foreclosing potential future sentencing reductions. **Doc. 52 at 5, 13** ("If you file contested motions I will consider that a rejection of any open offers and prepare for trial."). The requested interview notes were ultimately produced by the government on October 16, 2023. **Doc. 58 at 4.**

While the records were produced over a year late, Mr. Montoya received the requested notes nearly nine months before the current trial date. *See* **doc. 106.** The Defendant also had the interview

6

notes in time to submit reply briefings on his pre-trial motions. *See* **docs 70, 71, 72, 73, 74.** The Court disagrees with the characterization of the Government's withdrawal of plea offers as an improper threat; rather, this statement was a reasonable response to, at that point, fifteen months of pre-trial plea negotiations with the Defendant. *See* **doc. 52 at 13.** Therefore, the Defendant was prejudiced minimally by the Government's delay, if at all.

The third *Wicker* factor is the feasibility of curing the delay with a continuance. *See* 848 F.2d at 1061. Mr. Montoya has not requested a continuance, likely because he received the notes in time to prepare for trial and his reply briefings. *See generally* **docs. 52; 72.** Because the Defendant has had months to review the produced materials, suppression of Mr. Montoya's interview statements will have no positive effect on the integrity of the Court's schedule.[3] *See* **docs. 72, 81**; *Paup*, 933 F.3d at 1234. This factor weighs against the Defendant. *See Wicker*, 848 F.2d at 1061.

Taking the three *Wicker* factors together, the Defendant has not met his burden to suppress evidence and testimony about his interrogation statements. *See* 848 F.2d at 1061. The Government's reason for the delay was flawed, but not made in bad faith. *See* **doc. 58 at 4.** The Defendant was not prejudiced by the Government's delay, either in completing his pre-trial briefings or through the withdrawal of open plea offers. *See* **doc. 72 at 5**; *Golyansky*, 291 F.3d at 1249. Neither party has requested a continuance. *See generally* **docs. 52, 58, 72.** Because the Government ultimately produced the notes, suppression of evidence is a severe sanction not necessary to accomplish full compliance with the Discovery Order. *See Wicker*, 848 F.2d at 1060. And without a showing of bad faith by the Government, this Court declines to take the significant step of suppressing evidence and testimony about Mr. Montoya's interrogation at trial. *See Golyansky*, 291 F.3d at 1249.

---

[3] The Court granted the Defendant's Unopposed Motion to Continue Trial on February 05, 2024, based on discussions with the parties about the feasibility of the previously set March 11, 2024, trial setting. Trial is now set for June 10, 2024. **Docs. 104, 106.**

The Court therefore **DENIES** the Defendant's Opposed Motion to Exclude Testimony and Evidence Regarding Interrogation of Defendant Due to Discovery Violations. **Doc. 52.** The Court orders the United States to produce any remaining discovery pursuant to the Discovery Order, if it has not already done so, including any written records documenting Mr. Montoya's interrogation statements.

**IT IS SO ORDERED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE